ARCHBALD, District Judge. It is objected that the only evidence on the subject of the respondent's insolvency was that which was obtained by calling and cross-examining him, which, it is claimed, the creditors had no right to do. But by section 3 d of the bankrupt act it is specially provided that, where a preferential transfer of property while insolvent is charged as the act of bankruptcy relied upon, the person against whom the petition has been filed is required to appear at the hearing with his books, papers, and accounts, and submit to an examination, as well as give testimony as to all matters tending to establish his insolvency, and upon his failure to do so the burden of proving his solvency is thrown upon him. This is a sufficient answer to the objection.

To maintain his solvency, the respondent relies upon certain book accounts, aggregating about $1,800, which, outside of the debt to Boyle, his brother-in-law, to whom he turned over his stock of merchandise, is the amount of his indebtedness. These accounts, he claims, would enable him in time to pay dollar for dollar of all that he owes, but this expectation is hardly warranted by what he has further to say with regard to them. About one-third—$600—is what is coming to him from accounts due the firm of Boyle & Coddington, which has been out of business for at least two years, during which time nothing substantial has apparently been collected upon them, which is very fair proof that they are not at present collectible. Of the accounts on his own books, which have been gathering since he has been in business by himself, some are against parties who admittedly have no property, and are simply expected to pay because they are honest. Expectations and reliances such as these are too uncertain to stand as property of value when balancing up the assets and liabilities of an alleged bankrupt. It may be that something could be realized out of them in time by patient and persistent effort, but that does not satisfy the law. It is their value now that is to be taken, and that can be but little, under the circumstances. If they had any real worth, it may be well asked why the bankrupt did not turn them over to his brother-in-law and go on with his store instead of transferring his whole stock of merchandise, which put him out of business.

The exceptions to the report of the referee are overruled, and an adjudication directed in accordance with his recommendations.

---

In re HUNT et al.

(District Court, N. D. Iowa, C. D. November 5, 1902.)

1. BANKRUPTCY—INVOLUNTARY PETITION—SIGNING AND VERIFICATION BY ATTORNEY.

The attorney of a creditor may sign his client's name to a petition in involuntary bankruptcy, and may verify the same, where he is shown to have knowledge of the facts stated therein.

In Bankruptcy. On motion to dismiss petition because insufficiently signed and verified.

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 123.

C. A. Hunt and M. A. Hunt, pro se.
John A. Senneff and John Hammill, for creditors.

SHIRAS, District Judge. In this case a petition in involuntary bankruptcy was filed by certain creditors, the same being verified by the oath of the attorney at law and agent of the petitioners, by whom the names of the petitioners are signed to the petition, and who states in the verification that he is the duly authorized agent of the petitioners, and has knowledge of the facts recited in the petition.

In general order in bankruptcy No. 4 (89 Fed. iv) it is provided that:

"Proceedings in bankruptcy may be conducted by the bankrupt in person in his own behalf, or by a petitioning or opposing creditor; but a creditor will only be allowed to manage before the court his individual interest. Every party may appear and conduct the proceedings by attorney, who shall be an attorney or counsellor authorized to practice in the circuit or district courts."

In clause 9 of section 1 of the bankrupt act it is provided that the word " 'creditor' shall include any one who owns a demand or claim provable in bankruptcy and may include his duly authorized agent, attorney or proxy."

These provisions are ample to authorize the signing of the names of the creditors to the petition by their attorney and agent, as was done in this case. In section 18 of the act, which deals with the mode of procedure in involuntary cases, it is enacted that "all pleadings setting up matters of law shall be verified under oath." As it is not declared that the petition shall be verified by the creditor in person, the verification will be sufficient if made by the agent or attorney representing the creditor, it being made to appear that the affiant has knowledge of the facts verified.

The motion to dismiss the petition filed in this case is therefore overruled.

---

### SLOAN v. UNITED STATES.

(Circuit Court, D. Nebraska. October 31, 1902.)

1. INDIANS—SUITS FOR ALLOTMENTS OF LANDS—SPECIAL JURISDICTION OF CIRCUIT COURT.

Act Aug. 15, 1894 (28 Stat. 305), amended by Act Feb. 6, 1901 (31 Stat. 760), conferring upon the circuit courts "jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions, involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty," and further providing that any one in whole or in part of Indian blood, who claimed "to have been unlawfully denied or excluded from any allotment or parcel of land," might bring suit in the proper circuit court for the enforcement of his rights, was intended to vest such courts with full authority to hear and determine every question arising in any suit brought by a claimant to an allotment; and the fact that such questions have been decided by the land department adversely to the claimant neither affects the court's jurisdiction nor concludes it on any matter of law or fact.

2. SAME—CONSTRUCTION OF ACTS AND CONVENTIONS.

In construing treaties or conventions made with the Indians, the terms "half blood" and "mixed blood" are to be given their ordinarily under-