PADGETT et al. v. NORRELL, trustee, et al.

ATKINSON, J. In 1914 a vendor executed a bond for title for described realty. From that time forward the vendee with his wife and minor children continuously resided on and cultivated the land. On October 4, 1919, the vendee surrendered his bond for title and received a warranty deed to the land from the vendor, which recited the consideration of $1000. The deed was held by the grantee unrecorded until May 7, 1921, at which time he delivered it back to the vendor with request that a deed to the same land be executed to his wife. The vendor executed a second deed as requested, reciting the same consideration and dating it back to the date of the first deed without mentioning it. The second deed was recorded on the day it was executed. On October 6, 1921, the vendee was adjudicated a bankrupt upon his voluntary petition in bankruptcy, but the above-mentioned land was not mentioned in the petition. The only property "scheduled" in the petition for bankruptcy was a different tract of land valued at $300, held under bond for title with no part of the purchase-price paid. The liabilities were "Secured claims, $300.00; unsecured claims, $2-242.10; accommodation paper, $402.00; total, $2944.10." The unsecured claims were debts created during the years 1920 and 1921. Most of the unsecured claims were reduced to judgment after the adjudication in bankruptcy. On December 1, 1921, the trustee in bankruptcy instituted an action against the vendee and his wife and the vendor and others, to recover the land for administration as the estate of the bankrupt, and to cancel the second deed as a cloud upon title, and for other relief. The answer of the wife alleged that soon after the vendee received the bond for title he agreed with her that the land should be her property and the deed should be made to her, "if she would do her house work and help in the field . . and . . look after the children and take those that were large enough . . to help raise

crops . . and . . earn the money with which to pay the balance of the purchase-price;" that she fully performed her contract and from proceeds of her labor gave the money to the vendee to finish paying for the land. When the deed was made the wife was not present, and it was taken in the name of the vendee without her knowledge or consent. The vendee subsequently returned the deed to the grantor and procured the second deed to be made directly to the wife, for the purpose of vesting the title according to his agreement. On the trial the plaintiff introduced a certified copy of the proceedings in bankruptcy; ·the original deed to the vendee; fi. fas. based on the above-mentioned judgments and evidence, tending to show extension of credit to the vendee on the faith of his ownership of the property without notice of the wife's alleged equity; and that the vendee knew of the first deed as soon as it was made, and was returning it for taxes in his own name. The defendant introduced the second deed; and the wife testified substan-· tially as alleged in the answer, as to the agreement between the vendee and herself, payment for the land from proceeds of her labor performed under the agreement and from sale of crops produced by her labor and the labor of her husband, and the circumstances under which both deeds were made; also that she was ignorant, and that the justice of the peace had said it would be "all right" to date the second deed back to the date of the first deed. The judge directed a verdict finding the land for the plaintiff and canceling the second deed as a cloud upon title. The vendee and his wife and the vendor made a motion for new trial, on the usual general grounds and two other grounds that complained of a ruling on the admissibility of evidence and the direction of the verdict. The exception is to the judgment refusing a new trial. *Held:*

1. The omission of the petitioner in voluntary bankruptcy to sign the jurat verifying the signed petition, which jurat was duly signed by the officer administering the oath to the petitioner, and the omission of the petitioner to sign jurats similarly executed relating to the attached schedules of creditors and assets, were at most amendable irregularities that were cured by the judgment adjudging the petitioner a bankrupt. 1 Fed. Stat. Ann. (2d ed.) 740, § 18 c; In re McConnell, 11 Am. Bankr. R. 418; In re Bellah, 116 Fed. 69, 8 Am. Bankr. R. 310; In re Vastbinder, 126 Fed. 417, 11 Am. Bankr. R. 118; 7 C. J. 43, § 57, and cases cited in note 90.

(a) The omission of the petitioner to sign the jurats mentioned above does not render the judgment adjudicating the petitioner a bankrupt void and subject to collateral attack.

(b) The judge did not err in admitting in evidence the duly certified copy of the proceeding in bankruptcy, over the objection that the judgment appeared upon its face to be void.

2. Legal title vested in the husband in virtue of the first deed, which was not divested by its surrender to the grantor; and the second deed by the grantor to the wife conveyed no title to her, as the grantor then had none which could be conveyed. *Jordan* v. *Pollock*, 14 *Ga.* 145; *Holder* v. *Scarborough*, 119 *Ga.* 256 (2) (46 S. E. 93).

(a) The wife having failed to establish by her proof a case which would divest the legal title of the husband and vest the same in herself on

the theory of implied trust or of contract fully performed by her, the verdict for the plaintiff was demanded, and the court did not err in directing a verdict in his favor.

3. Applying the foregoing principles, the evidence demanded the verdict for the plaintiff, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*

No. 3821. FEBRUARY 14, 1924.

Equitable petition. Before Judge Blair. Forsyth superior court. May 12, 1923.

*J. P. Brooke* and *Morris & Hawkins,* for plaintiffs in error.

*H. L. Patterson* and *Wood & Vandiviere,* contra.